1                    UNITED STATES DISTRICT COURT

2                      DISTRICT OF SOUTH DAKOTA

3                         WESTERN DIVISION

4
  *    *    *    *    *    *    *    *    *    *
5  UNITED STATES OF AMERICA,          CR 14-50064

6                      PLAINTIFF,     SEPTEMBER 23, 2016
       VS.                            RAPID CITY, SOUTH DAKOTA
7
  TIMOTHY J. FIELDING,
8
                       DEFENDANT.
9  *    *    *    *    *    *    *    *    *    *

10

11              TRANSCRIPT OF PLEA AND SENTENCING

12           BEFORE THE HONORABLE JEFFREY L. VIKEN,
              CHIEF UNITED STATES DISTRICT JUDGE
13

14  APPEARANCES:

15  FOR THE PLAINTIFF:   SARAH B. COLLINS, ESQ.
                         Assistant United States Attorney
16                       District of South Dakota
                         #201 Andrew W. Bogue Federal Building
17                       515 Ninth Street
                         Rapid City, SD 57701
18
    FOR THE DEFENDANT:   STEPHEN DEMIK, ESQ.
19                       Assistant Federal Public Defender
                         District of South Dakota
20                       703 Main Street, Second Floor
                         Rapid City, SD 57701
21
    COURT REPORTER:      JUDITH M. THOMPSON, R.P.R.
22                       Official Court Reporter
                         909 St. Joseph Street
23                       Suite 505
                         Rapid City, South Dakota 57701
24

25

                         JUDITH M. THOMPSON
              (605) 348-8610    FAX  (605) 343-6842

1          THE COURT:  This is the time set for a hearing in

2     the case of United States versus Timothy Fielding, our file

3     14-50064.

4          May I have the appearance of government counsel,

5     please?

6          MS. COLLINS:  Sarah Collins on behalf of the

7     United States.

8          THE COURT:  Afternoon, Ms. Collins.

9          MS. COLLINS:  Afternoon.

10         THE COURT:  Defense.

11         MR. DEMIK:  Stephen Demik, Assistant Federal

12    Public Defender on behalf of Mr. Fielding, who is present

13    before the Court, Your Honor.

14         THE COURT:  Afternoon Mr. Demik.

15         MR. DEMIK:  Good afternoon.

16         THE COURT:  Afternoon, Mr. Fielding.

17         THE DEFENDANT:  Afternoon.

18         THE COURT:  You know, Shirley L'Esperance

19    prepared your presentence report.  She's unavailable to us,

20    so we have Mr. Ryan Akers from U.S. Probation.  He is very

21    familiar with your case; and Jacob King from United States

22    Probation as well.

23         So what I have in front of me in this case, which

24    is an unusual set of circumstances, is a waiver of

25    indictment, the filing of a superseding information

1    charging false statement in violation of federal law, a

2    plea agreement, a factual basis statement, and a

3    presentence investigation report which was prepared before

4    the plea.

5           Mr. Fielding, have you had enough time to work

6    with Mr. Demik to prepare for this hearing today?

7           THE DEFENDANT:  I think we are good.

8           THE COURT:  All right.  Well, if you have

9    questions during this hearing either of me or of Mr. Demik,

10   if you want to talk to your lawyer, would you let me know

11   that, please?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  We will take a break and you can have

14   at much time as you want to work with Mr. Demik.

15          Let's start this hearing by having you placed

16   under oath, sir.

17          TIMOTHY FIELDING, DEFENDANT HEREIN, SWORN

18          THE COURT:  Mr. Fielding, do you understand you

19   are now under oath and if you lie to me during this hearing

20   the government can charge you with false statement or

21   perjury?  Do you understand that, sir?

22          THE DEFENDANT:  Yes.

23          THE COURT:  So I have to go through a whole

24   series of questions with you to make certain that you are

25   able to understand your rights; and if you are going to

1    enter a plea of guilty to this superseding information

2    charging false statement, that you do so knowingly,

3    voluntarily, with full understanding of your rights, and

4    full understanding of the consequences if you choose to

5    plead guilty to this crime.

6              You are 52 years old now, sir?

7              THE DEFENDANT:  Yes.

8              THE COURT:  What's your educational background?

9              THE DEFENDANT:  High school graduate.

10             THE COURT:  And you have a work history in the

11   trucking industry, is that correct?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  In terms of your mental status and

14   understanding your rights making a decision in your case

15   today, are you suffering any sort of mental or physical

16   conditions of any kind?

17             THE DEFENDANT:  No, sir.

18             THE COURT:  Do you have any emotional problems

19   that are interfering with your ability to understand your

20   rights?

21             THE DEFENDANT:  No, sir

22             THE COURT:  Are you taking any prescription

23   medications at this time?

24             THE DEFENDANT:  No, sir.

25             THE COURT:  Have you had any intoxicants in the

1    last 72 hours?

2           THE DEFENDANT:  No, sir.

3           THE COURT:  Any reason at all that you would not

4    be able to understand your rights and make a decision in

5    this case today?

6           THE DEFENDANT:  No, sir.

7           THE COURT:  And have you been fully satisfied

8    with the legal advice and representation which Mr. Demik

9    has given to you?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Well, I have to remind you of the

12   rights you have in this case.  The original indictment in

13   the case charges you with a much more serious offense.  The

14   indictment in the case, sealed docket 48, charges you with

15   two counts and a forfeiture allegation.  Count 1 is

16   attempted commercial sex trafficking; Count 2 is attempted

17   enticement of a minor using the internet.  Those are

18   serious crimes of major consequences.  The superseding

19   information, which we are going to talk about, is a lesser

20   offense; it has a different punishment.

21          So let's make sure you understand that do you not

22   have to accept the plea agreement and the deal that's been

23   made between yourself, Mr. Demik, or Mr. Colbath, and the

24   U.S. Attorney's office.  Do you understand you do not have

25   to accept any plea bargain?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  All right.  So here is what would

3    happen, Mr. Fielding.  You have absolutely every right to

4    go to a jury trial, but it would be on the original

5    indictment in the case, the two counts which I have just

6    described to you, plus the forfeiture allegation is

7    something I would handle after trial.

8          Now, you would be presumed innocent of any

9    wrongdoing, as you are right now.  As you sit here, there's

10   no evidence you have done anything wrong; no evidence of

11   any kind.  So the purpose of a trial on the indictment

12   would be to determine whether the United States through

13   witnesses and exhibits and evidence at a trial could

14   convince a jury of 12 people beyond a reasonable doubt that

15   you are guilty of one or more of the offenses charged in

16   that indictment.  Do you understand that's what a trial

17   would be about?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  So we have trials in this courtroom

20   all the time.  We have tried trials on these charges that

21   appear in the indictment.  So we have seen juries here;

22   they'd be selected from the western division, which is

23   roughly the western third of South Dakota.  You would be

24   present for all stages of your trial.  You would be

25   represented by Mr. Demik, who is an experienced trial

1    lawyer.  You would have effective representation of counsel

2    at every stage of that trial.  You would be present for

3    jury selection where Ms. Collins and Mr. Demik and I would

4    ask the jurors questions to determine whether they were fit

5    jurors to hear your case, whether they accepted that you

6    are presumed innocent of any wrongdoing; whether they would

7    hold the United States to its burden of proof beyond a

8    reasonable doubt of each element of any charge brought

9    against you.  And through that process we would select a

10   jury of 12 people and one alternate.  They would be the

11   judges of the facts in that case.  And their sworn duty

12   would be to consider the prosecution's evidence and

13   testimony and arguments and determine whether they believe

14   the United States could prove each element of an offense

15   beyond a reasonable doubt.

16        You don't have to do anything at trial.  You are

17   presumed innocent.  I make clear to the jurors if you

18   choose not to testify, they cannot consider that in any way

19   in arriving at their verdict.  You don't have to call any

20   witnesses, you don't have to put on any evidence; the

21   burden never shifts to you to prove your innocence, but at

22   trial the burden is always on the United States to prove

23   guilt.

24        So through the trial process, the prosecution

25   will put on witnesses and evidence.  Mr. Demik could

```
 1    cross-examine those people to help the jurors understand
 2    whether they should believe or give weight to that
 3    testimony and evidence.  And you need do nothing.
 4           Now, if you wanted to defend, you wanted to get
 5    on the stand, take the oath and testify truthfully about
 6    any matter connected with these charges, you could do that.
 7    You can take this stand and you could testify to the jury
 8    in response to Mr. Demik's questions and testify under oath
 9    about any matter connected with these charges.  You would
10    be cross-examined by the prosecutor, of course, but you
11    would have an absolute right at trial to testify or not and
12    that choice is yours alone.
13           Now, you could call witnesses.  We'd issue
14    subpoenas and require people to come to court if they had
15    information or knew something about the circumstances that
16    gave rise to these charges, or anything else connected with
17    this trial would be admissible in evidence.  And again, Mr.
18    Demik could call those witnesses to the stand to give
19    testimony and they'd be cross-examined by the prosecution.
20    You wouldn't testify or call witnesses to prove that you
21    are innocent; that's not your burden; the jury will
22    understand that.  If you chose to defend it, it would be
23    for the purpose of assisting the jury in understanding
24    whether or not they should believe the prosecution's
25    witnesses, what weight to give to that testimony, and
```

1    ultimately to decide whether or not the United States could

2    prove an offense against you beyond a reasonable doubt.

3    Those 12 jurors have to reach a unanimous verdict.

4           If the government failed to prove any essential

5    elements of one the offenses charged, you cannot be found

6    guilty of that charge; you would be found not guilty of

7    that charge.  And a not-guilty verdict in this courtroom

8    are common; they are not infrequent.  Tough cases get tried

9    by the U.S. Attorney's office; jurors do what they can to

10   sort out the evidence.  And believe you me, after 39 years

11   of working in this courtroom, they take these things

12   seriously and they consider each case on its own merits.

13   They are not influenced by sympathy or prejudice; they work

14   very hard to follow law and be judges of the facts.

15          So unless and until the jury concluded that you

16   were guilty beyond a reasonable doubt of one or more of the

17   charges, you are presumed innocent.  So you have that whole

18   range of rights at trial.

19          Do you have a question about any of those rights?

20          THE DEFENDANT:  No, sir.

21          THE COURT:  You understand that if you go forward

22   with this plea agreement and plead guilty to this false

23   statement charge, that you will be giving up your right to

24   a jury trial?

25          THE DEFENDANT:  Yes, sir.

1          THE COURT:  If I accept your guilty plea,

2     Mr. Fielding, you are convicting yourself of false

3     statement and there will be no jury trial.  Are you clear

4     about that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  You will always have the right to the

7     effective assistance of counsel, whether you want to go to

8     trial or whether you intend to plead guilty and go to

9     sentencing.  But other than that right to counsel, these

10    other rights connected with trial are lost if you plead

11    guilty to this crime.  Do you understand that?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Any question at all about those

14    realities?

15         THE DEFENDANT:  No, sir.

16         THE COURT:  All right.  Well, let's take a look

17    at the plea agreement in this case, Mr. Fielding.  It's

18    entered as docket entry 64 filed on July 25, 2016.  Do you

19    have the plea agreement in front of you?

20         I need to go over parts of this plea agreement

21    with you to make sure you understand.  But let me ask

22    first:  have you carefully reviewed this plea agreement

23    with your lawyer?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Do you fully understand every

```
 1    provision of the plea agreement?

 2              THE DEFENDANT:  Yes.

 3              THE COURT:  Again, if you have questions, please

 4    ask.  Let's take a look at paragraph B of the plea

 5    agreement; it's on page 2.  Paragraph B is entitled, "Plea

 6    Agreement Procedure Specific Sentence of Two to Eight Years

 7    Imprisonment Binding on the Court."  It is an extremely

 8    rare thing that I accept binding plea agreements.  My view

 9    is that sentences to be imposed in criminal cases is a

10    judicial function.  There are rare circumstances which the

11    parties present to me, and you presented to me here, rare

12    circumstances under which there are reasons, for example,

13    to avoid what was, I think, a potential 15-year mandatory

14    minimum on sex trafficking given the age of the potential

15    child involved.  Is that right, Ms. Collins?

16              MS. COLLINS:  It was charged as a ten-year, Your

17    Honor.

18              THE COURT:  A ten-year mandatory minimum

19    sentence.  So whether or not to go to trial on that charge

20    and the other charge in the indictment is entirely up to

21    you.  Entirely up to you.  But when the circumstances are

22    presented to me in this way, and the facts are as they

23    appear to be in the filed documents, it would be my

24    approach to accept this type of arrangement because if you

25    and your attorney believe this is a just outcome and the
```

1    prosecution believes it's a just outcome, the avoidance of

2    a mandatory minimum ten-year sentence about which I could

3    do nothing to sentence you below that, that's the kind of

4    circumstance under which I have accepted a binding plea

5    agreement.  So paragraph B says that under this plea

6    agreement the parties are going to recommend a sentence of

7    not less than two years up to eight years' imprisonment as

8    an appropriate disposition of this case.

9            Do you understand what the plea agreement says?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Do you understand that that agreement

12   is binding on the Court?

13           THE DEFENDANT:  Yes, sir.

14           THE COURT:  All right.  Is it your view that that

15   is a fair and just sentence in this case if you plead

16   guilty to false statement?

17           THE DEFENDANT:  Yes, sir.

18           THE COURT:  Well, let's take a look at paragraph

19   C.  This states your intention to plead guilty to the

20   offense of false statement.  Is that your plan?

21           THE DEFENDANT:  Yes, sir.

22           THE COURT:  If you do that, the charge carries a

23   maximum term of imprisonment up to eight years, as set by

24   Congress as the maximum.  So it would be any term of years

25   up to eight, but not under this plea agreement.  It would

1    be not less than two, with a maximum possible eight years

2    in prison.  Do you understand that, sir?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  In addition to imprisonment there

5    could be a fine of up to 2000 -- I'm sorry -- $250,000 or

6    both a fine and imprisonment.  Do you understand that, sir?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  Now, we don't have parole in the

9    federal system, we have what's called supervised release

10   which here is up to three years on supervision after

11   release from custody.  That's designed for people who have

12   rehabilitative needs.  We can talk about whether you have

13   any such needs justifying supervision after custody.  But

14   you can receive up to three years of supervision after

15   custody.  Do you understand that?

16           THE DEFENDANT:  Yes, sir.

17           THE COURT:  If you violate supervised release in

18   this case and a petition or motion is filed on which we'd

19   we have a hearing, if I found you had violated supervised

20   release in a serious way, I could sentence you up to

21   two years in prison just for violating supervised release.

22   Do you understand that?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  As with every federal felony, there

25   is, at the time of sentencing, a required payment of $100

1    into a Victim's Assistance Fund.  It's a national program.

2    You understand that would have to be paid?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  Then in paragraph C it also goes on

5    to say that if you are sentenced under the terms of this

6    plea agreement, after sentencing the United States would

7    move to dismiss the indictment against you which is

8    currently pending.  Do you understand that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Do you have any question about the

11   maximum possible penalty in the case?

12             THE DEFENDANT:  No, sir.

13             THE COURT:  Do you have any question about the

14   restriction that I am under that I cannot sentence to you

15   less than two years?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  Let's take a look, then, in the plea

18   agreement at paragraph F.  Again, this has to do with the

19   prosecution and defense's recommendation regarding

20   sentence.  It says that if I accept your guilty plea and we

21   have a sentencing hearing, the United States and you and

22   Mr. Demik are free to recommend whatever sentence you feel

23   is appropriate as long as it's within the not less than two

24   no more than eight-year range.  Do you understand that?

25             THE DEFENDANT:  Yes.

1          THE COURT:  Now, within that range of two years

2     to eight years, I am free under the terms of this agreement

3     to sentence you to any period of custody of not less than

4     two up to eight.  Do you understand that?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  If you or Mr. Demik make a

7     recommendation of two years, or whatever period of time it

8     is, but not less than two years, and I do not follow your

9     recommendation, you realize you cannot withdraw your guilty

10    plea?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  That is, if you are unhappy with my

13    sentence, even though it's within the agreed upon, not less

14    than two no more than eight years, if you are unhappy with

15    it you cannot take back your plea.  Are you clear about

16    that?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  Let's take a look, then, at paragraph

19    K, which is on page 6.  It's an agreement to forfeit

20    property.  You had some amount of money; I think it was,

21    like, $186, less than $200 on your person at the time of

22    your arrest in this case.  You are agreeing under paragraph

23    K that that was your money and you are agreeing to forfeit

24    it in connection with this case.

25         THE DEFENDANT:  Yes, sir.

1          THE COURT:  Is that your agreement?

2          THE DEFENDANT:  Yes.

3          THE COURT:  On page 8, paragraph P is entitled,

4    "Waiver of Offenses and Appeal Rights."  Now, if you choose

5    not to enter this plea agreement and go to trial in the

6    indictment, in the event you were convicted, you would have

7    a full range of appeal rights.  Errors that were made

8    before trial, at trial, constitutional errors, and other

9    legal claims; you would have a full right to challenge any

10   matter connected with your trial or sentencing in this case

11   without limitation.

12          Under the terms of this plea agreement, which is

13   standard language, you are giving up all rights to appeal

14   any sentence I give you within the terms of this agreement

15   except if you can show this Court has no authority over the

16   case, no jurisdiction, you can always appeal that.  If in

17   application of the Federal Sentencing Guidelines in the

18   case I find a basis in the guidelines system to depart

19   upward to cover an aggravating factor or some other reason,

20   you could challenge my decision to depart upward.  But

21   here, given the guideline range, there may very well be an

22   upward departure or upward variance above the guideline

23   range, because it's actually at or below the two-year

24   sentence below which I cannot impose custody.  You really

25   are not going to be able to challenge an upward departure,

1    upward variance above the guideline range in this case as I

2    see it.

3                    Ms. Collins, is that the way you see it?

4                    MS. COLLINS:  I would agree.

5                    THE COURT:  The guidelines in the case are 18 to

6    24 months, if I remember that correctly.  We will get to

7    the guidelines.  We have to put them on the record.  18 to

8    24 months would be the guideline range when we get to that

9    point.  24 months is the high end of the guidelines, but

10   it's the least I can sentence you to under the binding plea

11   agreement.

12                   So, again, there's a limitation on your ability

13   to appeal this sentence.  Do you understand that?

14                   THE DEFENDANT:  Yes, sir.

15                   THE COURT:  What do you think, Mr. Demik?  Is

16   that accurate, he would have no right under this binding

17   plea agreement to challenge the sentence above 24 months

18   up to eight years.  Is that the way you read it?

19                   THE DEFENDANT:  Yes.

20                   THE COURT:  Mr. Demik?

21                   MR. DEMIK:  May I have one second, Your Honor?

22                   THE COURT:  Yes.

23                   MR. DEMIK:  I agree, Your Honor.  That provision

24   is in paragraph P of the plea agreement.

25                   THE COURT:  Right.  The top end of the guideline

1   range is the lowest period of time which I can sentence and

2   that is 24 months.  Sentencing him above 24 months could

3   not result in an appeal of an upward departure or variance

4   to a longer sentence as long as it didn't exceed the

5   statutory maximum of eight years.

6           MR. DEMIK:  Well, Your Honor, I don't want to be

7   a stickler, but the way I read paragraph P is there's an

8   appellate waiver except if the Court departs upward from

9   the guidelines.  However, I believe that Ms. Collins and

10  Mr. Colbath had a discussion regarding that.  I am not

11  going to take an issue with it, but I think in terms of the

12  plea agreement, except from the appellate waiver or

13  anything above the guidelines, but I defer to Ms. Collins'

14  conversation with Mr. Colbath on that; it sounds like

15  Mr. Fielding is clear on that.

16          THE COURT:  Right.  Do you understand that, Mr.

17  Fielding?

18          THE DEFENDANT:  Yes.

19          THE COURT:  All right.  So here is my finding for

20  the record in the event there is an appeal on that topic.

21  My interpretation of this plea agreement and the way in

22  which I am going to apply it is that notwithstanding the

23  facts, the Federal Sentencing Guideline range appears to be

24  18 months to 24 months.  If I choose to sentence

25  Mr. Fielding above 24 months or two years, that is the top

1    of the guidelines, but it's the least I can sentence him to

2    under a binding plea agreement.  Therefore, if I sentence

3    him to a period of imprisonment longer than two years up to

4    the statutory maximum of eight years, you cannot appeal an

5    upward departure or variance that would result in that

6    longer sentence.  That is my interpretation for the record.

7         Do you have any questions about the terms of this

8    plea agreement, Mr. Fielding?

9         THE DEFENDANT:  No.

10         THE COURT:  Is this your signature on page 9 of

11    the plea agreement?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Did you sign the agreement on

14    March 31, 2016, because you understood it?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Now, other than the promises that are

17    made in the plea agreement between you, your attorney, and

18    the U.S. Attorney's office, other than their promises to

19    dismiss the indictment after sentencing and make the

20    recommendation of somewhere between two and eight years'

21    custody, were any other promises made to you by anyone to

22    get you to accept this plea agreement?

23         THE DEFENDANT:  No.

24         THE COURT:  Did anyone in law enforcement or

25    anywhere else threaten you in any way to get you to accept

1   this plea agreement?

2           THE DEFENDANT:  No.

3           THE COURT:  Are you under any pressure, other

4   than the pressure of needing to make a decision, has anyone

5   pressured you to get you to accept this agreement?

6           THE DEFENDANT:  No.

7           THE COURT:  Are you accepting it of your own free

8   will?

9           THE DEFENDANT:  Yes.

10          THE COURT:  Is that a voluntary act on your part?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Let's take a look at the factual

13  basis statement, docket 65.  Do you have that statement in

14  front of you, sir?

15          THE DEFENDANT:  Yes.

16          THE COURT:  It's a two-page document.  Have you

17  carefully reviewed this factual basis statement with your

18  attorney?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Is every fact in the statement true

21  and correct?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Is there any detail which is not

24  accurate?

25          THE DEFENDANT:  No.

1            THE COURT:  Is this your signature on March 31,

2    2016, on page 2 of the factual basis statement?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Again, did anyone threaten you to

5    accept these facts?

6            THE DEFENDANT:  No.

7            THE COURT:  Any promises beyond the scope of the

8    plea agreement or any pressure by anyone to get to you

9    admit these things?

10           THE DEFENDANT:  No.

11           THE COURT:  Are these facts true?

12           THE DEFENDANT:  Yes.

13           THE COURT:  Are you voluntarily accepting these

14   facts as true in your case?

15           THE DEFENDANT:  Yes.

16           THE COURT:  There are other consequences of

17   having a felony conviction, Mr. Fielding.  You have no

18   criminal history of any kind.  So this is a felony

19   conviction.  It means in terms of your civil liberties you

20   can never own or possess a firearm, unless that right is

21   restored.  You can't vote in most jurisdictions.  You can't

22   serve on jury.  And there could be other civil consequences

23   of having a felony conviction.

24           Have you discussed those things with your

25   attorney?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you feel you fully understand the

3     consequences of having a felony conviction?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Do you fully understand the maximum

6     possible penalties and the consequences of pleading guilty

7     to this false statement charge?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Ms. Collins, would you read the

10    superseding information?

11         MS. COLLINS:  Yes, Your Honor.  In the matter

12    entitled United States of America, Plaintiff, versus

13    Timothy J. Fielding, Defendant.  The superseding

14    information for false statement reads as follows.

15         "The Assistant United States Attorney charges and

16    informs the Court on or about between August 1, 2014, and

17    August 7, 2014, in the District of South Dakota, and

18    elsewhere, the Defendant, Timothy J. Fielding, did

19    knowingly and willfully make a materially false,

20    fictitious, and fraudulent statement and representation in

21    a matter within the jurisdiction of the executive branch of

22    the government of the United States, and engaged in false

23    negotiations with agents during an undercover operation.

24    The statement and representations were false because the

25    defendant, Timothy J. Fielding, then and there knew he did

1   not intend to engage in the acts for which he negotiated."

2   All in violation of 18 United States Code Section 1001.

3   Thank you.

4           THE COURT:  Thank you, Ms. Collins.

5           Mr. Fielding, do you fully understand the charge

6   which Ms. Collins just read?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  Do you have any question about what

9   you would be admitting if you plead guilty to that offense?

10          THE DEFENDANT:  No, sir.

11          THE COURT:  Do you have any questions of me or of

12  Mr. Demik before I ask you how you wish to plead to this

13  offense?

14          THE DEFENDANT:  No, sir.

15          THE COURT:  If would you please stand, then,

16  Mr. Fielding.

17          To the offense of false statement as set out in

18  the superseding information, sir, what is your plea, not

19  guilty or guilty?

20          THE DEFENDANT:  Guilty.

21          THE COURT:  All right, Mr. Fielding.  Let me ask

22  you:  are you pleading guilty to this crime because you are

23  in fact guilty?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Is it your own voluntary wish to

                    JUDITH M. THOMPSON
              (605) 348-8610     FAX  (605) 343-6842

1    enter a plea of guilty to this charge?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Do you feel you are fully competent

4    and able to understand the nature of this offense and the

5    consequences of pleading guilty to it?

6          THE DEFENDANT:  Yes.

7          THE COURT:  You may be seated, sir.

8          Mr. Demik, in your professional opinion do you

9    think if Mr. Fielding proceeded to trial on the offenses

10   charged in the superseding information of false statement

11   that the United States could produce proof beyond a

12   reasonable doubt each element of that charge?

13         MR. DEMIK:  Yes.

14         THE COURT:  Do you have any questions of me,

15   Mr. Fielding, or of your lawyer before I accept your guilty

16   plea?

17         THE DEFENDANT:  No.

18         THE COURT:  It is my finding in your case, sir,

19   United States versus Timothy Fielding, file 14-50064, that

20   you are fully competent and capable of entering an informed

21   plea.  You understand the nature of the false statement

22   charge, and understand the consequences of pleading guilty

23   to it.  I do find that our plea is knowing and voluntary,

24   it is supported by an independent basis in fact, which is

25   set out in your sworn factual basis statement.  So I am

1  going to accept your guilty plea, Mr. Fielding, and adjudge

2  you guilty of the offense of false statement as charged in

3  the superseding information.

4       Are you in a position where you wish to go to

5  sentencing on this charge today, Mr. Fielding?

6       THE DEFENDANT:  Yes, sir.

7       THE COURT:  Mr. Demik.

8       MR. DEMIK:  Yes, sir.

9       THE COURT:  Ms. Collins.

10       MS. COLLINS:  Yes, Your Honor.

11       THE COURT:  I did study carefully the plea

12  presentence investigation report.  It's unusual to prepare

13  a presentence report in advance of a change of plea.

14  However, it permits me by having this information to decide

15  whether or not to accept the binding plea agreement.

16  Counsel, take all the time you need to confer.

17       MR. DEMIK:  Sorry, Your Honor.

18       THE COURT:  That is fine.

19       MR. DEMIK:  I needed to clarify something.

20       THE COURT:  Take your time; make sure you have

21  your discussion.

22       I have reviewed this presentence investigation

23  report carefully and I am accepting the binding plea

24  agreement.  You have entered that agreement, you pled

25  guilty under it, and I accept it for purposes of

1  sentencing.

2          Now, in addition to the presentence investigation

3  report in the event you are going to get to a sentencing in

4  the case, I did study other documents.  I did see that as

5  of today's date there was a waiver of appearance on the

6  superseding information and entry of plea of not guilty.

7  That is, you have a document here which permits you to --

8  not to -- to plead guilty to the superseding information at

9  your first hearing.  Did you carefully review this waiver

10  with Mr. Demik?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  I have it in front of me.  Did you

13  sign this document agreeing to waive what was standard

14  practice at the initial appearance and entry of a not

15  guilty plea, then a later change of plea proceeding.  Are

16  you waiving those processes?

17          THE DEFENDANT:  Yes.

18          THE COURT:  You are waiving indictment on the

19  false statement charge, is that correct?

20          THE DEFENDANT:  Yes.

21          THE COURT:  All right.  Well, I will accept that

22  waiver and we will file that document in the file in the

23  case.

24          Now, in addition to the presentence report, I saw

25  the addendum to the report.  There are no defense

1    objections, Mr. Demik?

2              MR. DEMIK:  None, Your Honor.

3              THE COURT:  No United States objections to the

4    presentence report, Ms. Collins?

5              MS. COLLINS:  That's correct.

6              MR. DEMIK:  Your Honor, I'm sorry.  It occurred

7    to me based on the discussion we had during the change of

8    plea hearing that paragraph 48 of the presentence report

9    might need to be amended.

10             THE COURT:  Let's take a look at 48.

11             MR. DEMIK:  The last sentence, Your Honor.

12             THE COURT:  Yes.  It's the paragraph in the plea

13   agreement entitled, "Impact of plea agreement."  The last

14   sentence says, "The plea agreement reduced the defendant's

15   maximum statutory custody exposure from a mandatory minimum

16   of 15 years to life down to eight years."  And what I have

17   heard here is that under the indictment filed in the case

18   the mandatory minimum which would apply would be ten years

19   to life.  Is that right, Ms. Collins?

20             MS. COLLINS:  That's correct, Your Honor.  We

21   have indicted for a child between 14 and 16.

22             THE COURT:  Yes.  Is that your understanding as

23   well, Mr. Demik?

24             MR. DEMIK:  Yes, Your Honor.

25             THE COURT:  Is that agreeable to you if we change

                    JUDITH M. THOMPSON
              (605) 348-8610     FAX  (605) 343-6842

 1    that in your presentence report, Mr. Fielding?

 2         THE DEFENDANT:  Yes.

 3         THE COURT:  I think it more accurately reflects

 4    the reality of the indictment in the case and also makes it

 5    clear you were not up against a 15-year mandatory minimum,

 6    which is a more serious crime.  So what we will do in the

 7    statement of reasons, Mr. Akers, and you can tell Ms.

 8    L'Esperance, we will make a correction in paragraph 48.

 9    That will clarify it, for example, if you were in prison

10    it's a statement of reasons.

11         Is that acceptable, Mr. Demik?

12         MR. DEMIK:  Yes, Your Honor.  Thank you.

13         THE COURT:  Mr. Fielding?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Ms. Collins?

16         MS. COLLINS:  Yes.

17         THE COURT:  Let's go on, then.  Were there any

18    other comments or objections in terms of a change or

19    amendment to the presentence report, Ms. Collins?

20         MS. COLLINS:  No.

21         THE COURT:  There are defense objections to the

22    report.  I appreciate receiving them, Mr. Demik.  We will

23    take each one of those in turn before I go farther in the

24    sentencing.

25         So let's turn to the defense objections and the

1    addendum.  I'm sorry.  There were no objections.  You

2    worked the concerns out in paragraphs 26, 30, 32, is that

3    right, Mr. Demik?

4              MR. DEMIK:  Yes, Your Honor, that's my

5    understanding.  I didn't see that Mr. Colbath had filed any

6    formal objections.

7              THE COURT:  No, they were resolved.  I appreciate

8    that.

9              Did you have any legal or factual objections to

10   the presentence report, Mr. Demik?

11             MR. DEMIK:  None, Your Honor.

12             THE COURT:  Well, notwithstanding the fact that

13   there are no objections, I still have to go through the

14   Federal Sentencing Guidelines, which I will do in a moment,

15   Mr. Fielding.

16             In addition to studying the presentence report, I

17   very much appreciated your letter.  It was lengthy, it was

18   well thought out; it certainly expresses a great many, I

19   think, heart-felt sentiments about the tragedy that's

20   following you for engaging in false statement under these

21   circumstances.  You will have every right to speak about

22   this when we get to sentencing.  But I certainly respect

23   receiving your letter.

24             As is often the case with people who have a solid

25   family background, you have letters that were submitted by

1    Catherine Fielding, Krysta Simons; and Karey Davis, your

2    daughter; Carol Silvis sent a letter.  All them expressing

3    enormous affection for you, the role that you played in the

4    family, the supportive role that you had in their lives,

5    and the importance that you have and support you have which

6    is very positive going forward.

7            There was a sexual offender evaluation by mental

8    health professionals, Delmonico & Griffin, which I read

9    with interest.  That was conducted; the outcome being that

10   mental health professionals concluded you are not a

11   pedophile, there's a low risk of any future crimes, sex

12   crimes involving children, so that eliminates that whole

13   question about mental health unless it's challenged.

14           And then your attorney put in a sentencing

15   memorandum asking for the low end of plea agreement, that

16   is, two years' custody with self-surrender to the Bureau of

17   Prisons, which has a positive effect on classification.

18           Were there any materials in addition to those

19   things submitted for my review?

20           MR. DEMIK:  No, Your Honor.

21           THE COURT:  Ms. Collins?

22           MS. COLLINS:  No, Your Honor.

23           THE COURT:  Well, the Federal Sentencing

24   Guidelines were put in place, Mr. Fielding, in part on the

25   theory that someone charged with false statement in any

1   federal court in the United States, if they got a

2   sentencing on that charge, could expect to receive a range

3   of months of imprisonment called for by the guidelines, so

4   it's a calculation.  It has theoretical or actual bases in

5   empirical data for each offense type.  A base offense level

6   is assigned to every federal crime.  Here the base offense

7   level is 14 for false statement.  Four levels are added

8   because it's a 18 USC Section 1001 conviction, but the

9   false statement related to sex offenses in violation of

10  federal law, so four levels are added to the base, giving

11  you an adjusted offense level of 18.

12        There's a two-level reduction in your favor.  You

13  completely accepted responsibility for this offense.  That

14  takes you down two levels.  The United States requested a

15  third-level reduction for resolving the case without trial.

16  So you will see at paragraph 20 your total offense level is

17  15.

18        The guidelines have a method for counting

19  criminal history.  Applied in your case you have zero

20  criminal history, which puts you in the most favorable

21  category on the sentencing table of Criminal History

22  Category I.

23        We get the guideline calculation in paragraph 47

24  on page 11 of the presentence report.  Based on a total

25  offense level of 15 and a Criminal History Category I, the

1    guideline range for imprisonment in this case is 18 months

2    to 24 months in federal custody; that's a year and a half

3    to two years in federal custody.  That's the guideline

4    range.  The maximum set by Congress is up to eight years

5    for this crime.  I have accepted the binding plea

6    agreement, and so notwithstanding the guideline range, I

7    will sentence you to not less than 24 months, two years,

8    and not more, of course, than eight years, which is the

9    maximum set by Congress.

10         Supervised release for false statement under

11   these circumstances is not more than three years of

12   supervision after release from custody.  The guidelines

13   would call for one year to three years of supervision after

14   your release from custody.

15         Almost every federal felony would be probation

16   eligible for false statement and many other offenses, but

17   not when it's a binding plea agreement with a sentence of

18   not less than two years' custody.

19         You are not eligible for probation under the

20   guidelines system.

21         The maximum fine is $250,000.  The guideline

22   range for a fine is 4,000 to $40,000.  I am not aware of

23   any reason a fine would be useful in case like this one.

24         There's no restitution requested, Ms. Collins?

25         MS. COLLINS:  Correct.

1          THE COURT:  There is a required payment of $100

2     into the Victim's Assistance Fund, Mr. Fielding.  It's

3     mandatory at the time of sentencing in all federal cases.

4          The Federal Sentencing Guidelines are not binding

5     on me.  I have to consider them, but I am not bound to

6     follow them.

7          Is that an accurate statement of the statutory

8     and guideline factors for sentencing?

9          MS. COLLINS:  It is.

10          THE COURT:  Do you agree, Mr. Demik?

11          MR. DEMIK:  I agree, Your Honor.

12          THE COURT:  With the exception of paragraph 48

13     and the change which we will make as indicated, I am going

14     to adopt the presentence investigation report without

15     change.

16          So now, Mr. Demik, Mr. Fielding, and anyone who

17     wishes to speak about sentencing, I would be pleased to

18     hear from you.  Mr. Demik.

19          MR. DEMIK:  Yes, Your Honor.  You read my

20     sentencing memorandum.  I think what's clear is

21     Mr. Fielding doesn't present any serious risk or danger to

22     the community and that's evidenced by the letters that you

23     received and the report that you made reference to.  In

24     that report it contains a lot of useful information for the

25     Court in protecting the public under that 3553(a) factor.

 1          Your Honor, I would argue I don't think this is

 2   any more than a two-year case.  I am familiar with these

 3   cases and Mr. Colbath reached this plea agreement with the

 4   government, I think for good reason, having looked through

 5   the discovery and reviewed it prior to today's hearing.

 6          As far as I am aware of sentencing disparities, I

 7   am aware that there are individuals who received three-year

 8   sentences, but they also pled to different charges.  False

 9   statement, which Mr. Fielding has admitted, the government

10   put in the factual basis in the plea agreement that he

11   mislead law enforcement officers.  He mislead them by their

12   belief that he was going to follow through with this sex

13   act that they were conducting their sting operation on.  So

14   I think a two-year sentence is -- certainly it shouldn't be

15   more than that and that would be my recommendation to the

16   Court.

17          I put everything before the Court that I have.

18          I know that his family has come out here from

19   Pennsylvania, he drove out from Pennsylvania.  As the Court

20   is aware, I am making a request for a self-surrender date.

21   I think that is unusual and extraordinary, but I think that

22   these circumstances it would save both the government and

23   Mr. Fielding resources.

24          And also, Your Honor, the important benefit to

25   him, of course, is that when BOP does their classification

1      that's significantly affected by whether an individual is

2      allowed to self-surrender or not and if he is allowed to

3      self-surrender, he's designated in approximately four to

4      five weeks, he can report to the facility where he is

5      designated.

6              He has been on pretrial release for quite some

7      time, Your Honor.  There's been no issues.  He has been

8      completely compliant.  He came all the way out here with

9      his family for the sentencing, fully aware that the plea

10     agreement he signed called for a sentence of imprisonment,

11     so I don't think he presents a risk of flight.  And

12     understanding that it's an extraordinary request, I just

13     wanted to put it before the Court.  I think it's

14     appropriate and permissible by the Court.

15             THE COURT:  If I take that approach, within what

16     period of time is Mr. Fielding able to report once he's

17     designated?

18             MR. DEMIK:  Well, Your Honor, my understanding --

19     the Court probably knows better -- but from my 12-plus

20     years of experience in the federal system, normally a safe

21     bet is five weeks for BOP to get their designation done.

22     In an abundance of caution, I would ask for at least

23     six weeks.  That would give us a week cushion there.  Of

24     course, if he doesn't self-surrender, Your Honor, he will

25     stay at Pennington County, he will be taken down to

1   Oklahoma, and he will be kept while they do all their

2   designation paperwork.  If he's allowed to directly

3   surrender to the facility, my understanding is it takes

4   about five for the designation to be made, so I am

5   requesting six weeks.

6           THE COURT:  If the designation is made and he's

7   notified, within what period of time is he able to report?

8   24 hours?

9           MR. DEMIK:  Assuming it's within 80 miles of his

10  legal address, which is in Pennsylvania, absolutely within

11  24 hours, Your Honor.

12          THE COURT:  48 would get him to California.  I

13  will consider it.

14          MR. DEMIK:  So, Your Honor, having filed the

15  sentencing memorandum and put forth the exhibits, I don't

16  have anything further to say unless the Court has any

17  questions.  His family is here.  I know they would like to

18  speak to the Court, if the Court is amenable.

19          THE COURT:  Of course.  Family support is

20  critically important when a person comes out of custody.

21  Reentering the community is a much more effective process

22  when family-supported.  I read the letters which I

23  consider.

24          If you wish to speak, if you'd go to the podium

25  and introduce yourself so Judy can have your name in our

1    record, I would be pleased to hear from you.

2            You take all the time you need.  This is a tough

3    place to be talking.  You just hang in here.  Use that

4    microphone so we will be able to hear you.

5            MS. FIELDING:  I am Catherine Fielding; I'm Tim's

6    wife.  I want you to know that he's such a caring man.  He

7    takes care of me.  I have to live in Florida and I came all

8    the way from Florida out here today to address you because

9    without him, I don't know what we are going to do.  I get

10   social security disability; it's only $700 a month.  And

11   without him -- he just helps me so much.  I can't walk.  I

12   am never going to walk again.  I was in a very bad accident

13   four years ago and lost my leg.  I nearly lost my life.

14   And he has been there the whole time.  And he helps me with

15   my daughter.  She was in a very abusive relationship.  She

16   came to Florida with two kids so it's not just me that

17   needs help, it's my daughter and the two kids, too.  So

18   there's like four of us down there.  I don't know what we

19   are going to do without him.  I mean, before this happened

20   he would come to Florida all the time and check on us.  And

21   since this happened, he's on a monitor.  He calls every

22   day.  Whatever you need; just do whatever you need.

23           THE COURT:  Criminal behavior, including this

24   type of criminal behavior, usually hits the family, the

25   loved ones the hardest.  I have no doubt that Mr. Fielding

1    will be able to handle a custody sentence.  The problem is

2    whether the rest of you will, about which I can do nothing.

3    But I hear you.  I respect your being here to help me

4    understand because it has an effect on the length of

5    sentence.  You know, in this plea agreement he can get up

6    to eight years.  Understanding his life circumstance is

7    very helpful.

8              MS. FIELDING:  He takes care of his mom, too,

9    because she had a stroke.  There's so many things.  And she

10   couldn't be here because she can't walk.  But she is not in

11   good health at all.  He's the only one around to take care

12   of his mom.  So there's so many things.

13             THE COURT:  There's tragedy everywhere you look

14   for the family in this case.

15             MS. FIELDING:  Pretty much.

16             THE COURT:  You are very courageous to come here

17   and speak, but you let him know how important he is in

18   life.

19             MS. FIELDING:  Oh, he is.

20             THE COURT:  In a very public way, too, and I

21   respect that.  Is there anything else you want me to think

22   about?

23             MS. SILVIS:  My name is Carol Silvis.  I am

24   Tim's girlfriend.  I have been dating him for about a year

25   and a half.  I just want you to know he's a very good man.

I have never known a man that worked like he does.  He

works like a dog.  If you let him come home and do this,

turn himself in, he's going to go home and go back to work

until he has to surrender because that's what he does.  He

gets up in the morning and goes to work.  He hasn't had no

violations, he has no criminal record, he just -- sometimes

he's stupid with things, you know, but he is a very good

man.  I don't know what else to say.  Thank you.

THE COURT:  I have no doubt of it.  We will get

him home.  The question is when.  We will figure that out.

Thank you for speaking.

MS. SIMONS:  My name is Krysta Simons.  I am

Tim's daughter.  I appreciate you taking the time to read

all our letters and allowing us to come here and speak to

you.  I know that you are -- it's not very flexible in what

you can do as everybody sits here and tells you how much we

need him.  He's taught me a lot in life.  Be hard-working,

be honest.  And this mistake is about my dad,

unfortunately; that's how you guys know him.  I know

there's not much you can do, but in my eyes -- I mean this

respectfully -- there are things about this that aren't

fair.  For a job, I work for children and youth.  I do CPS

investigations.  I see people not serve jail time that

actually have the intent and do things to children.  I know

there's not much you can do with the two years, but really

consider the minimum in regards to the mistake of my dad.
And I hope that came across in everything you read and what
you have reviewed.  Thanks.

     THE COURT:  Thank you, Ms. Simons.  There aren't
many people who walk out of this courtroom if they have
sexual contact with children that don't walk out without
going to prison.  I guess you had different experiences.

     Good afternoon, sir.

     MR. KELLOGG:  Good afternoon.  My name is James
Kellogg.  I was with Timothy when he was arrested, and my
wife.  We were having a couple days at Sturgis.  I have
know Tim for 25 years.  He works in my basement; he's
worked for me for the last 10 years.  And I do believe it's
been all just a big mixup.  And he does anything for me; I
do anything for him.  I live in New York; he lives in
Pennsylvania.  And he works from 6:00 to 8:00 because he
can't stay out overnight.  But he does whatever I ask him;
he works seven days a week.  He does everything that I ask
him and more.  I don't know what else to say.  But he has
been a true friend and I really -- like I said, I was there
and I just feel that a lot of things were really thrown out
of proportion and it was a very, very big -- I don't want
to say mixup -- but it just got carried away.  I don't know
how else to say it.  But I guess I was sleeping in the
truck next to him, me and my wife.  And it just -- I don't

1    know what else to say, but Timothy is a very good man, good

2    father, and I couldn't ask for a better friend.

3              THE COURT:  Does he have employment with you when

4    he's out of custody?

5              MR. KELLOGG:  Pardon?

6              THE COURT:  Does he have employment with you when

7    he's out of custody?

8              MR. KELLOGG:  Yes.  He has worked for me for the

9    last -- I have known him; we drove truck together; he had

10   his own truck and then I started a small company and he

11   came to work for me.  Like I said, he can only work from

12   6:00 in the morning to 8 o'clock.  If he can't get

13   something done in that time, he will work Saturday and

14   Sundays to get it done.  I drove him up here, him and Carol

15   and their dog, in my new pickup.  I have to go to Montana

16   after this.  I left my son and a new employee in the

17   office.  I have 15 employees.  I hope I have an office when

18   I get back.  But I took the time out because I believe in

19   Tim.

20             THE COURT:  Well, here is the thing.  It's very

21   helpful to hear from you.  You are outside the family.  You

22   are a stable employer.  And that's critically important for

23   someone coming out of custody.

24             MR. KELLOGG:  I couldn't ask for a better

25   employee.  He watches my employees; if he sees somebody

         1    doing something wrong, he will tell me.  He's my eyes and

         2    ears.

         3              THE COURT:  Your taking the trouble and the time

         4    and investment to be here makes a difference.

         5              MR. KELLOGG:  I try because I believe that -- I

         6    was there, you know.  We were woken up, you know.  And I,

         7    just like I said, I believe it was just a big mistake,

         8    that's all.  I don't mean to say disrespectfully, but it

         9    just happened, but whatever.  I don't know how to say it.

        10              THE COURT:  I understand.

        11              MR. KELLOGG:  Can I have my $186 back?  That was

        12    my money.

        13              THE COURT:  Ask Ms. Collins about that.

        14              MR. KELLOGG:  Thank you.

        15              THE COURT:  Watch that dog in your new truck.

        16              Good afternoon.

        17              MS. KAREY FIELDING:  I am Karey Fielding .  My

        18    dad is my best friend.  Him and I fight, you know, typical.

        19    But if it wasn't for him, I don't know where me and my kids

        20    would be.  I drive up to see him all the time in

        21    Pennsylvania to stay with him, you know.  Haul my work

        22    stuff up.  Now I don't know what I am going to do.  My kids

        23    love him.  I hope you consider everything here today.  We

        24    are going to fall apart trying to figure out what to do

        25    with missing that big component in our lives.  I don't

1     condone the whole situation.  It breaks my heart to think

2     about like why we are here today.  We are all here.  It

3     kills him, too.  If he could turn back time, he would.  I

4     hope you have it deep down in your heart take all this.

5     Thank you.

6          THE COURT:  Well, I appreciate your coming in.

7     Looks to me like you have great strength in your family to

8     get through this.

9          Mr. Fielding, do you wish to speak today?

10          THE DEFENDANT:  Yeah.  I don't know if I can

11     follow any of that.

12          THE COURT:  I don't know how you can follow it

13     either, but instead of trying to compete with it, this is

14     your sentencing and no one else's.  You have every right to

15     be heard.  I will be pleased to hear from you.

16          You can sit there and tell me what is on your

17     mind; what I should think about.

18          THE DEFENDANT:  Well, as hard as it is to believe

19     for what I did, I consider myself a pretty intelligent

20     person.  I do.  Well, I did, believe me, I learned my

21     lesson.  I kind of entertained myself by a little, you

22     know, a little, take it out on people, that kind of stuff,

23     and I went a little too big on this one.  Wasn't very

24     intelligent.  Showed I might not be as intelligent as I

25     think I was.  I really screwed up my life and destroyed

1    everything, but I learned my lesson.  I don't -- I am

2    pretty nice to people now.  I don't harass them anymore.  I

3    don't have a lot to say.

4         THE COURT:  I believe you have learned your

5    lesson, but there are consequences.  The problem here, I am

6    sure it's going being explained to you, we have real

7    predators.

8         THE DEFENDANT:  Yes, I know.

9         THE COURT:  The Sturgis Sting Operation is

10   serious business.  We have real predators who come in in

11   response to these advertisements or business cards and they

12   are looking for real children; very young children; 12, 13,

13   14; under the age of 16.  They show up to meet the pimp and

14   they have got the money, the condoms.  One of them showed

15   up with a strawberry shake and gummy bears for a 12 year

16   old.  And these guys are going through with it.  And so the

17   fact that you messed with a sting operation when these guys

18   were -- these law enforcement officers were actually in the

19   business of trying to identify real child predators.  It's

20   a problem.  You get that.

21        THE DEFENDANT:  Yes, I get that, yeah.

22        THE COURT:  Well, the guys sitting in your chair

23   who have gotten extremely long prison sentences because

24   they did follow through and they were not kidding around.

25   It was the real deal.  Actually, you are the first person

1   who has been involved in the Sturgis Sting Operation that

2   wasn't the real deal in terms of the outcome here.  So it

3   sounds terribly severe, but there are reasons for that.

4   And I don't know how else to put it to you.  That's why I

5   specified in the plea agreement because the circumstances

6   are unusual, but they are criminal, and there are

7   consequences for that.

8           Are there other things you want me to think

9   about?

10          THE DEFENDANT:  I guess I just worry about my

11  certification on my license and stuff.  I would never be

12  able to work again.

13          THE COURT:  Well, you will have to deal with

14  that.

15          THE DEFENDANT:  That's my big concern.

16          THE COURT:  It has a lot to do with supporting

17  your family.  Thanks for talking through this.  It's much

18  better to have family in to get to know you better through

19  their eyes and writing and hearing from them and having a

20  chance to talk to them about this.  It helps with my

21  obligation in sentencing.

22          Mr. Demik, anything further?

23          MR. DEMIK:  Nothing further, Your Honor, unless

24  the Court has any questions.

25          THE COURT:  I don't have.

1          Ms. Collins.

2          MS. COLLINS:  Thank you, Your Honor.

3          As the Court is aware, this plea agreement allows

4   for me to ask for up to eight years and I am not going to

5   do that.  As I was looking back through my file, I found my

6   original plea offer in this case where Mr. Colbath had

7   presented to me what the defense was going to be and swayed

8   my thinking on Mr. Fielding and I was offering him a five

9   year.  And this Court is well aware of the United States'

10  view of this case on a spectrum of seriousness and that's

11  where I had put him mainly because he hadn't selected a

12  child, which was the only time we have had that where he

13  didn't fully select one of the ages, which some people in

14  my office thought he was an aggravator, some thought he was

15  a mitigator.

16          After considering everything that was presented

17  to me by Mr. Colbath, I made this offer.  And the most

18  significant thing about this offer, probably the biggest

19  benefit Mr. Fielding gets, is he's not walking out of here

20  as a registered sex offender.  Every single other one of

21  these guys we have had caught in these stings, we have ten

22  more this year, and, frankly, they keep coming from that

23  sting.  We have had three since the rally.

24          And the fact that -- let me take a step back.

25  When somebody is engaged in these negotiations and then a

meeting is set, basically the entire team is pulled off of
everything they are doing and for officer safety reasons,
they focus on the meet.  So that means that when
Mr. Fielding did this, every single child sex predator that
was on line at that moment was being completely unwatched.
And as the Court is well aware, this sting in this year
caught some of the worst predators we have seen.
Frighteningly bad.  I cringe to think that he was taking up
the time in which we caught Mr. Graven; I cringe to think
about that.  Thankfully that wasn't the case, but what he
did was very serious.  This was not him messing with the
police officers that are there to take down the motorcycle
speeders, because there's an operation going on doing that
as well.  These are child sex predators; there's nothing
funny about them.  What he did was incredibly serious.  And
he took an entire team of agents that work tirelessly
during that week to try to protect those kids and the other
kids from online predators.

          Your Honor, I am asking for a term of
three years.  The reason why I am asking for something
greater than two is based on the seriousness of what he
did.  This Court is so well aware of how important the
sting is and how important it is that those agents are
doing what they do best is catch predators.  He put them
away for almost an entire evening with his game and that

1    can't be tolerated.

2              So based on that, I do believe that it does

3    warrant a greater sentence than this plea agreement.  But,

4    again, I am not asking for anything above that.  There are

5    good things about Mr. Fielding and those things I took into

6    account when I made this very unusual offer.  This Court

7    said it's the only time that the United States has made an

8    offer where a person gets to plead to basically the conduct

9    that he did.  So I am asking for three years, Your Honor.

10   I think it's a just sentence.   Thank you.

11             THE COURT:  Thank you, Ms. Collins.  As I said,

12   it's a very unusual plea agreement.  It's so unusual for me

13   to accept it as a binding agreement.

14             We talked about the Federal Sentencing

15   Guidelines.  I have to consider them.  The top of

16   guidelines here is 24 months which, under the law and the

17   approach of the guidelines, that's what anyone in your

18   situation could expect to receive on the upper end for this

19   crime.  But I also have to look at the federal sentencing

20   statute.  That's 3553(a) 18 United States Code, criminal

21   code.  And it is directed by Congress that every federal

22   judge at sentencing to fashion a sufficient, but not

23   greater than necessary sentence, and I have to take into

24   account all the factors.  The purpose of the federal

25   sentencing, they are set out in that law.  The nature of

1    the offense, seriousness of the conduct, and punishment,

2    your personal history and characteristics, the need to

3    protect the community from future crimes by you, the need

4    to send a message to the larger community that this type of

5    conduct will not be tolerated, and I am sure that's part of

6    the reason for the false statement charge in this case.

7    The word is out you don't mess with agents in a sting

8    operation of this nature in this jurisdiction.  It's a

9    federal felony and the consequences are serious.

10           I have to consider the guidelines and I do.

11           I have to avoid sentencing disparity.  That means

12   not give you such a lenient or severe sentence that it's

13   unfair to others with similar circumstances.  There aren't

14   any similar circumstances I have ever seen to the

15   particular facts here.

16           But I also have to consider your need for

17   rehabilitation and treatment.  That is, coming out of

18   custody what's the purpose and factors for supervised

19   release after custody.  So I do consider all these things.

20           This is an unusual case.  We have all spent a

21   great deal of time on it because it's producing an outcome

22   so different than any of the other state cases involving

23   predators looking for children.

24           Now, the letters from your family, their

25   testimony today, your employer and friends, your letter,

1    Ms. Collins' comments, Mr. Demik, I consider all those

2    things.  I cannot find a need for rehabilitation and

3    treatment.  You don't have a drug or alcohol problem; you

4    don't have mental health problems.  The mental health

5    professionals say that you are not a pedophile and that you

6    are at low risk for any type of reoffense in terms of sex

7    offense involving children.  So that's also extremely

8    unusual here.  Most people who come in with a federal

9    felony have a whole range of issues in life, going

10   frequently far back to their childhood.  You don't have any

11   of that.

12          So in terms of supervised release, I don't really

13   think that's it.  I am not willing to spend the resources

14   to supervise you after custody because I think there's no

15   reason to do so.  So rehabilitative resources that would be

16   available on supervision or the need to monitor you in the

17   community, weighing the 3553(a) factors, they all have

18   different weights in different cases.

19          Here you have successfully been on supervision

20   for an extended period of time with no problem.  So you

21   have been under supervision and we know you are not a

22   person who is violating the law and you haven't been

23   caught.  You are an understanding, hard-working person who

24   committed, as it turns out, a serious offense.  So I am not

25   concerned about supervised release in the case.

1              I am concerned about custody, which is why I

2      accepted the plea agreement.  This criminal behavior does

3      fully justify a custody sentence.  Its punishment and

4      nothing else; that's all it is.  But it has to be

5      proportionate to the nature of the behavior.  I have no

6      doubt about throwing these agents off because they all do

7      descend on the setup, the pimp, the undercover agents, and

8      the person seeking sex with children.  That becomes a whole

9      law enforcement scene where evidence is gathered, arrests

10     are made.  There are unfortunate consequences for holding

11     that scene over to you when you were not, as you say,

12     interested in seeking out a child for criminal purposes.

13     So it's a tough case for sentencing disparity because there

14     isn't much to compare with.

15              There is a federal sentencing guideline which is

16     the usual guardian of avoidance of disparity cases.

17              I think that a person can make a good argument

18     for a range of months of imprisonment above the two-year

19     floor of this binding plea agreement if circumstances or

20     otherwise in his life, the support system wasn't there, you

21     had real struggles where we thought there was going to be

22     repeat criminal offenses, the two-year low end of the

23     guidelines -- of the plea agreement would not nearly be of

24     consequence here.  I do believe, however, that the high end

25     of guideline range for 24 months, which is the bottom of

1    the binding plea agreement, is a fair and just sentence

2    under these circumstances and I will impose that.  So

3    that's my view of it.  No disrespect to your position.  I

4    accept the seriousness of pulling a team under these

5    circumstances out of what is a complicated task which is

6    sad to know it's been very successful again this year.

7             So if you would please stand, Mr. Fielding, I am

8    going to announce the sentence and then ask the attorneys

9    if there's any legal reason why it should not be imposed.

10            Based on the constitutional and statutory

11   authority vested in this Court, it's the judgment of the

12   Court that Timothy Fielding is hereby committed to the

13   custody of the United States Bureau of Prisons to be

14   incarcerated for a term of 24 months; that's two years.

15            Mandatory drug testing is suspended in this case

16   because you are a low risk of future use of controlled

17   substances.

18            As with every federal felony, I must require that

19   you cooperate in the collection of DNA.

20            Now, there's no purpose for a fine.  You don't

21   have the ability to pay a fine in the case.  I must order

22   that you pay $100 into a Victim's Assistance Fund.  That's

23   due immediately or it becomes part of your criminal

24   judgment in the case.

25            What's the situation with the $182, Ms. Collins?

1          MS. COLLINS:  Your Honor, as far as I knew that

2    was Mr. Fielding's money, so we have an order for

3    forfeiture.  He agreed to forfeit it.

4          THE COURT:  He did.

5          MS. COLLINS:  So based on the statement we have

6    on the record here today, I am asking him to forfeit it.

7    That was my understanding it was going to be used when he

8    was arrested for the child.

9          THE COURT:  Typically, the presence of currency

10    in the face of this kind of sting operation is for criminal

11    purposes.  You have agreed to forfeit it.  It's $182 and I

12    do order that you forfeit all interest in that amount.

13          You may be seated, Mr. Fielding.

14          Ms. Collins, is there any legal reason why the

15    sentence should not be imposed as announced?

16          MS. COLLINS:  No, Your Honor.

17          THE COURT:  Mr. Demik?

18          MR. DEMIK:  No, Your Honor.

19          THE COURT:  Any need for clarification, Mr.

20    Akers?

21          PROBATION OFFICER AKERS:  No, Your Honor.

22          THE COURT:  I do impose the sentence as I have

23    announced it, Mr. Fielding.

24          I am going to permit you to self-surrender to the

25    United States Bureau of Prisons within 48 hours of the

1    designation of that federal correctional institution.  You

2    can work with Mr. Demik and get your questions answered

3    through him or directly with the Marshal Service on how

4    that shall happen.  But I will permit self-surrender in

5    this case.  It will assist probably with your security

6    classification and may have other benefits to you.  You

7    have not shown any reason to believe that you will not

8    self-surrender.  Will you do that, sir?

9            THE DEFENDANT:  Yes, I will self-surrender.

10           THE COURT:  Do so within 48 hours of designation

11   by the Bureau of Prisons.

12           Now, you do have 14 days from today's date within

13   which to challenge this sentence in the United States Court

14   of Appeals.  We talked about the waiver of your appeal

15   rights as part of your entry of a plea of guilty today, so

16   your appeal rights are extremely limited under the terms of

17   the plea agreement.  But if you wish to challenge this

18   sentence, you please tell Mr. Demik and he will file a

19   notice of appeal to protect your rights.  I must make

20   certain on the record you understand you have only 14 days

21   to appeal.  Do you understand that?

22           THE DEFENDANT:  I understand.

23           THE COURT:  Now, Ms. Collins, is there a motion

24   to dismiss the indictment in the case?

25           MS. COLLINS:  Yes, Your Honor.

1          THE COURT:  That was part of the plea arrangement

2     here and I grant the government's motion to dismiss the

3     indictment.  You are free of those charges now.

4          Is there anything further, Ms. Collins?

5          MS. COLLINS:  No, Your Honor.

6          THE COURT:  Mr. Demik?

7          MR. DEMIK:  No, Your Honor.

8          THE COURT:  Well, I really appreciate all the

9     traveling from Florida and Pennsylvania.  It makes a

10    difference in fashioning a sentence to hear from you and

11    also to read the letters you submitted and hear from you,

12    Mr. Fielding.  I appreciate that.

13         I wish you success.  I have no doubt when you are

14    out of custody, that your life will go back to what you

15    said in your letter.  You just want to get back to your

16    normal life.  I wish you success in that, sir.

17         Court is adjourned.

18         (Court adjourned at 4:10 p.m.)

19

20

21

22

23

24

25

```
 1                    COURT REPORTER'S CERTIFICATE

 2    STATE OF SOUTH DAKOTA  )
                              SS
 3    COUNTY OF PENNINGTON    )

 4        I, Judith M. Thompson, R.P.R., Official Court Reporter in

 5    and for the United States District Court, District of South

 6    Dakota,

 7        DO HEREBY CERTIFY that I acted as such Court Reporter at

 8    the Hearing of the within-entitled action, and that the

 9    foregoing transcript, pages 1 to 55, inclusive, is a true and

10    complete transcript of my shorthand notes taken at said

11    Hearing.

12        Dated at Rapid City, South Dakota, this 28th day of

13    September, 2016.

14

15

16                             /s/
                    _____
17                  Judith M. Thompson, R.P.R.
                    Official Court Reporter
18

19

20

21

22

23

24

25
```